UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| DUVELZA ESPERANZA RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 5:16-CV-00053 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Pending before the Court is this civil action seeking judicial review of an administrative decision. Plaintiff Duvelza Esperanza Rodriguez brought this lawsuit pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), and appeals the final decision of the Acting Commissioner of the Social Security Administration denying her application for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). Both parties having consented to the jurisdiction of the United States Magistrate Judge, the case was transferred to this Court for all further proceedings, including entry of judgment pursuant to 28 U.S.C. § 636(c). *See* (Dkt. No. 23).

For the reasons discussed herein, this Court **AFFIRMS** the Commissioner's decision and **DISMISSES** with prejudice Plaintiff's Complaint.

## PROCEDURAL HISTORY

Plaintiff was born on July 9, 1949, is able to communicate in English, completed approximately seventy-two hours of college credit, and had past relevant experience as a court clerk, general clerk, and leasing agent. (Tr. 4–9, 84, 273–80). Plaintiff applied for disability insurance benefits (DIB) on August 1, 2013 due to the alleged onset of disability beginning March 21, 2013.[1] Plaintiff's application was denied initially and on reconsideration. (Tr. 123–27, 129–32). On Plaintiff's request, an Administrative Law Judge (ALJ) held a hearing in San Antonio, Texas, to review Plaintiff's application *de novo* on August 12, 2015. (Tr. 1–40). Plaintiff was represented by an attorney at the hearing and testified via video conference from Laredo, Texas. (Tr. 9, 31–33, 36–39). During the hearing, the ALJ asked several questions of a neutral vocational expert, including hypothetical questions regarding what sort of work a person with Plaintiff's limitations could reasonably be expected to perform. (Tr. 31-33). On September 3, 2015, the ALJ issued a written opinion denying Plaintiff's application. (Tr. 78).

## ISSUES

This Court must decide whether substantial evidence and the relevant legal standards support the Commissioner's finding that Plaintiff was not disabled. Plaintiff makes two arguments.

First, the ALJ found that Plaintiff could perform light work with an hourly sit/stand option. Plaintiff argues this finding insufficiently accommodates Plaintiff's alleged inability to sit, stand, and walk for extended periods.

---

[1] Prior to Plaintiff's application in this case, Plaintiff filed a DIB application on May 24, 2011 and an Administrative Law Judge found Plaintiff was not disabled on March 20, 2013. (Tr. 97–109).

Second, the ALJ found that Plaintiff could perform detailed, but not complex, work; in Plaintiff's view, this determination failed to properly accommodate her acknowledged moderate limitation in concentration. Plaintiff also alleges that the ALJ failed to properly include this limitation in her hypothetical questions to the vocational expert.

**DISCUSSION**

I. STANDARD OF REVIEW

This Court's review of Social Security disability cases is limited to determination of (1) whether the Commissioner's final decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standards in evaluating the evidence. *See, e.g., Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotation marks omitted). Substantial evidence is more than a mere scintilla, but can be less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See, e.g., Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citation and internal quotation marks omitted). To determine whether the Commissioner's decision is supported by substantial evidence, the court weighs four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chatter*, 64 F.3d 172, 174 (5th Cir. 1990); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). A court will find no substantial evidence only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971);

*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In applying the substantial evidence standard, courts must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). A court may not substitute its own judgment— even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Likewise, conflicts in the evidence are decided by the Commissioner, and if substantial evidence is found to support the decision, it must be affirmed even if there is evidence supporting the opposite conclusion. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## II. DISABILITY EVALUATION PROCESS

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining disability, the Commissioner follows a five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment that is severe; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations; (4) whether the impairment prevents claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work after taking into account age, education, previous work experience, and residual functional capacity (RFC). *See* 20 C.F.R. § 404.1520; *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Importantly, a person's RFC is not the least an individual can do despite his or her limitations or restrictions, but the most. 20 C.F.R. § 1545(a)(1); SSR 96-8P.

An individual applying for benefits bears the burden of proving that he or she is disabled for purposes of the Social Security Act. *Perez*, 415 F.3d at 461 (internal citations omitted). During the sequential evaluation process, the claimant bears the burden of proof on the first four steps; the burden then shifts to the Commissioner at the fifth step. *Id.*

III. THE ALJ'S DECISION

After considering the record as a whole, the ALJ followed the five-step sequential evaluation process and determined Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 78–84). Initially, the ALJ noted that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2015, thus requiring her to establish disability on or before that date. (Tr. 78). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment activity since her alleged onset date—March 21, 2013—through her date last insured—June 30, 2015. *Id.* At step two, the ALJ found Plaintiff "had the following severe impairments: fibromyalgia, obesity, hypertension, degenerative joint disease of the knees, degenerative disc disease, paresthesia of the right lower extremity, and major depressive disorder." *Id.* The ALJ considered Plaintiff's 2003 heart attack and heart surgery; Plaintiff's reported use of a cane since approximately 2011; Plaintiff's numbness in her right leg; and pain in her knees. (Tr. 81). The ALJ also considered Plaintiff's other alleged impairments, including a reported "history of chest pain, mild pancreatitis, and right upper extremity dysfunction," but ultimately found that Plaintiff's "records documented no other severe medically determinable impairments." (Tr. 78–79).

The ALJ also considered the following: Plaintiff's daily activities; the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication;

treatment other than mediation; any measures other than treatment that Plaintiff uses to relieve pain or other symptoms; and, any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. (Tr. 81–82).

For step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments for presumptive disability in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations. (Tr. 79–80); *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Next, the ALJ determined that Plaintiff has the RFC to perform light work, with lifting/carrying twenty pounds occasionally, lifting/carrying ten pounds frequently, standing/walking six hours in an eight hour day, sitting six hours in an eight hour day, with the option to alternate sitting and standing hourly; frequently balancing; to occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; that she must avoid unprotected heights; and that she is mentally limited to work involving detailed, but not complex, tasks (Tr. 80–81). The ALJ also considered Plaintiff's subjective complaints and found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 81–82).

At step four, and upon consideration of the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing her past relevant work as a general clerk, and that such work "did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 84). Accordingly, the ALJ then determined Plaintiff was not under a disability as defined in the Social Security Act at any time from the March 21, 2013 alleged onset date through the June 30, 2015 date last insured. *Id.*

IV. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC FINDINGS

The ALJ found that Plaintiff can perform light work, with a sit/stand option, and is limited to detailed, but not complex, tasks; plaintiff argues that this finding conflicts with the evidence in the record. (Pl's Br. at 4). The Court addresses Plaintiff's arguments with respect to the ALJ's physical RFC finding and mental RFC finding separately.

A. Substantial Evidence Supports the Physical RFC Finding

While acknowledging that the ALJ has the responsibility for determining a claimant's RFC, Plaintiff argues that a sit/stand option insufficiently accommodates Plaintiff's alleged inability to sit, stand, or walk. *Id.* Accordingly, Plaintiff concludes that the ALJ's physical RFC finding is not supported by substantial evidence. *Id.* In support of her allegation, Plaintiff points the Court to her testimony regarding her conditions, including fibromyalgia, chronic pain, and problems with her back, knees, and lower extremities. (Pl's Br. at 5). She also cites her need to use a cane, which, she argues, demonstrates difficulty balancing and an inability to stand or walk for extended periods. *See id.* (listing exhibits). Plaintiff states that her medical records support her claim that the pain is aggravated by sitting, standing, walking, and movement in general. *Id.* Plaintiff additionally argues that the ALJ failed to consider obesity in combination with her other impairments in making the RFC determination. *Id.* Finally, with respect to pain, Plaintiff points out that she is only required to show that there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or supported symptoms alleged—not evidence of actual pain or supported symptoms. *Id.* at 6 (citing 42 U.S.C. § 423(d)(5)(A)).

But as noted above, Plaintiff mistakenly asks this Court to re-weigh the evidence the ALJ already considered. Substantial evidence supports the ALJ's finding. The medical records show

that, despite Plaintiff's claims of constant pain, doctors have described her gait as intact and her legs as having normal range of motion, strength, and tone, despite evidence of a "probable thrombosed superficial venous segment." *See, e.g.*, (Tr. 673, 517). Records from a vein study in April of 2014 note that, although Plaintiff reported pain in her right leg, a physical exam revealed "normal range of motion, strength and tone," normal gait and coordination, "no evidence of thrombus formation, obstruction or reversed flow," and no superficial venous pathology. (Tr. 518-19). Additionally, those records further indicate that Plaintiff's right thigh and calf "were thoroughly evaluated for evidence of incompetent, enlarged, or abnormal perforating veins," and "none were identified." (Tr. 519). And records from June of 2015 similarly record that Plaintiff was "negative" for any musculoskeletal abnormalities, aside from nonspecific complaints of pain in her extremities. (Tr. 627). Those records note further that Plaintiff "is fully functional on her own." *Id*.

The ALJ also considered Plaintiff's medical records that show a history of degenerative joint disease and a chronic anterior cruciate ligament (ACL) tear in her left knee. (Tr. 82). The ALJ noted that Plaintiff was prescribed a cane for limited mobility and chronic leg pain in July 2011. *Id*; *see also* (Tr. 677) (prescribing a cane, dated July 2011). However, the ALJ also considered that several medical records beginning in 2013 indicate that Plaintiff ambulated without assistance, and that Plaintiff's gait and coordination were intact and normal. *Id*. In April 2014, Plaintiff continued to complain of paresthesia, pain, lightheadedness, and dizziness, but, as the ALJ noted, physical examination was unremarkable. (Tr. 518-19).

In October of 2013, a mental health professional noted in her report that Plaintiff was using a cane for a torn ACL, *see* (Tr. 495); by July of 2015, doctors noted she was able to "ambulate without assistance" and instructed her to "keep walking regularly," *see* (Tr. 673).

This instruction came quite some time *after* an X-ray from December of 2013 noted "degenerative changes involving the patellofemoral and medial joint compartments of both knees," (Tr. 509), indicating that Plaintiff's knee problems, though degenerative, did not prevent her from walking.

In fact, as the ALJ noted during the hearing, the mental health examiner's note in 2013 is the only reference in the record to Plaintiff's use of a cane, (Tr. 25-26). And as Plaintiff's own attorney acknowledged, (Tr. 26), no other medical records refer to Plaintiff's use of a cane, despite doctors' visits in December 2013 (Tr. 509), March 2014 (Tr. 517), April 2014 (Tr. 518-19), March 2015 (Tr. 520-619) and June 2015 (Tr. 627).

The records show a history of back pain, (Tr. 394, 372, 509), as well as a fibromyalgia diagnosis, (Tr. 433), which was exacerbated after Plaintiff ran out of her medication. Plaintiff's records also show a history of cardiac catheterizations, femoral artery pseudoaneurysm, and hypertension, as well as chronic pain in her right leg, controlled with medication. *Id.* The ALJ also considered that in March and August 2013, Plaintiff's compliance with treatment was noted as poor, due to the expense. (Tr. 436). Records from March 2014 repeated this finding. (Tr. 511).

The ALJ also considered Plaintiff's history of chest pain, cardiac catheterizations, and fibromyalgia. (Tr. 82). The records here, too, support the finding that these conditions did not render Plaintiff disabled. Records from April of 2013 show that Plaintiff's bout of chest pain due to pericarditis was relieved with a course of non-steroidal anti-inflammatory medications (NSAIDs) in 2012, and while she experienced occasional pleuritic chest pain (pain when breathing), those symptoms are controlled by NSAIDs. (Tr. 421). Those records similarly indicate that Plaintiff's non-obstructive coronary disease had resolved and remained

9

asymptomatic, and that her heart and lungs presented normally. (Tr. 423). A stress test in May 2013 did not show ischemia (tissue death due to lack of oxygen, which can indicate coronary artery blockage), cardiac arrhythmias, or any other cardiovascular symptoms. (Tr. 413). A myocardial perfusion study in June 2013 was also normal. (Tr. 415). And in April of 2014, Plaintiff denied chest pain, fatigue, dyspnea, orthopnea, edema, and palpitations. (Tr. 654).

Plaintiff was treated for mild pancreatitis in February and March of 2015, but, as the ALJ noted, there is no evidence that this condition impaired Plaintiff; and in fact, treatment notes from March 21 of that year note that Plaintiff's abdominal symptoms related to the pancreatitis "have largely resolved and she is back to her functional baseline, walking daily with no stated decline in her exercise tolerance or capacity." (Tr. 671). A CT scan in June 2015 showed a normal pancreas. (Tr. 634).

The ALJ considered the functional limitations resulting from obesity to be a severe impairment, and accounted for this in her physical RFC finding. (Tr. 78, 83). SSR 02-1p allows the ALJ to consider that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p, 2002 WL 34686281 at *1.

Plaintiff argues that obesity may indicate a high or severe risk of developing or exacerbating related impairments, and that the limitations of obesity plus other impairments may be greater than the limitations of other impairments alone. (Pl's Br. at 6). Plaintiff urges this Court to find error in the ALJ's alleged failure to account for this. *Id.* Contrary to Plaintiff's assertion, however, the ALJ's determination of Plaintiff's RFC did properly account for this layering effect, to the extent such an effect could be found in the record. *See* (Tr. 81-82) (reciting Plaintiff's physical limitations and the medical sources underlying each); *see also* (Tr. 83) (confirming that the ALJ considered "the functional limitations resulting from the claimant's

obesity in assessing the claimant's residual functional capacity"). However, despite Plaintiff's condition, there was no medical evidence that she suffered from tachycardia, heart problems, respiratory distress, or chest pain. (Tr. 631). And while her joint pain could be exacerbated by obesity, the ALJ thoroughly evaluated those conditions and accounted for them in the RFC determination. (Tr. 82).

"[I]n assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96-8p. The medical evidence indicated that obesity was among Plaintiff's medical conditions, and the ALJ accounted for this, *see* (Tr. 83, ); the ALJ was not, however, required to incorporate into the RFC any limitations for which she did not find support in the record, *see* SSR 96-8p, 1996 WL 374184 at *1 ("It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build[.]").

Similarly, the ALJ accounted for pain in the physical RFC, and substantial evidence supports the ALJ's findings. (Tr. 82). In particular, the ALJ determined that Plaintiff's pain is limiting, but when compared with the total evidence, not severe enough in frequency, intensity, or duration as to be disabling. *Id.* The ALJ also discounted some of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms. (Tr. 81). The ALJ was exercising her sound discretion when making this credibility determination: a claimant's testimony must be consistent with the objective medical evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render her disabled. *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985). Plaintiff must show that she is so functionally impaired that she is precluded from engaging in

substantial gainful activity. *Hames v. Heckler*, 707 F.2d 162, 167 (5th Cir. 1983). The ALJ, in considering the evidence and in discounting some of Plaintiff's testimony, applied this law correctly.

Here, the ALJ considered Plaintiff's daily activities, the location, duration, frequency, and intensity of the Plaintiff's pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication, the Plaintiff receives or has received for relief of pain or other symptoms, any measures other than treatment the Plaintiff uses to relieve pain or other symptoms, and any other factors concerning the Plaintiff's functional limitations and restrictions due to pain or other symptoms. (Tr. 81–82).

Following the ALJ's review of the record, the ALJ concluded that Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 82). To be sure, debilitating pain may limit the range of jobs a clamant would otherwise be able to perform. But the ALJ carefully considered Plaintiff's complaints of pain, and concluded that, although the underlying conditions existed, Plaintiff's description of the intensity and limiting effect was "not entirely credible." (Tr. 81). And again, wherever an ALJ's evaluation of subjective complaints is supported by substantial evidence, it is entitled to deference. *See Newton*, 209 F.3d at 452; *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Altogether, these records substantiate the ALJ's finding that Plaintiff' is not disabled within the meaning of the Social Security Act; and although facts and diagnoses in Plaintiff's favor do exist in the record, this Court may not re-weigh the evidence. *Perez*, 415 F.3d at 461; *Haywood*, 888 F.2d at 1466. The ALJ considered all of the evidence and, using its discretion, afforded certain weight to certain evidence; if the ALJ found some of Plaintiff's evidence

concerning the intensity, persistence and limiting effects of some symptoms to be lacking, this Court may not second-guess that judgment. *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (citing *Masterson*, 309 F.3d at 272 ("we will not . . . substitute our judgment for the Commissioner's")); *see also Abshire*, 848 F.2d at 640 ("[T]he Court must refrain from . . . substituting its judgment for that of the Secretary.")

Needless to say, these medical records do not disprove Plaintiff's claim that she experiences pain; however, the ALJ's determination was not that Plaintiff was pain-free, but rather that Plaintiff may perform light work, and is not disabled within the meaning of the Act. (Tr. 80). Because this determination is supported by substantial evidence, this Court may not disturb it. *See Copeland*, 773 F.3d at 923.

Similarly, because these factual findings were appropriate, the ALJ's hypothetical questions to the vocational expert, incorporating those limitations, were not in error.

B. Substantial Evidence Supports the Mental RFC Finding

As noted, the ALJ found that Plaintiff's mental RFC allows her to do detailed, but not complex, work. Plaintiff contends that this finding is inconsistent with the evidence of the record, and results from legal error. Plaintiff points out that the ALJ acknowledged "moderate limitations" in the domain of concentration, persistence, and pace. (Pl's Br. at 7) (citing Tr. 80–81). Plaintiff further argues that the ALJ failed to make a narrative function-by-function assessment of Plaintiff's capabilities for work-related mental activities, which resulted in legal error where the ALJ did not include Plaintiff's moderate limitation in the domains of concentration, persistence, and pace in the ALJ's hypothetical to the vocational expert. (Tr. 30–32, 80–84). Relying on SSR 96-8p, Plaintiff posits that the ALJ must consider the following categories of work-related mental activities in determining Plaintiff's mental RFC: (1) dealing

with changes in a routine work setting; (2) responding appropriately to supervisors and coworkers; (3) using judgment in making work-related decisions; and (4) understanding, remembering, and carrying out instructions. (Pl's Br. at 8).

Defendant responds that the ALJ properly considered all of Plaintiff's limitations, including her mental limitations in concentration, persistence, and pace, by finding that Plaintiff had the ability to perform work involving detailed, but not complex, tasks. (Dft's Br. at 9). Defendant recites numerous considerations related to Plaintiff's mental limitations that the ALJ made following review of the record, and further notes that the ALJ specifically acknowledged Plaintiff's history of major depressive disorder in Plaintiff's mental RFC. *Id.* at 9–11. However, Defendant argues, the evidence does not require additional nonexertional limitations beyond those that the ALJ found. *Id.* at 9. With respect to SSR 96-8p, Defendant argues that the ALJ is required to consider the four aforementioned mental activities, but is not required to discuss each work-related mental activity in her decision. (Dft's Br. at 11). Instead, Defendant argues, the ALJ properly evaluated all of the relevant evidence regarding Plaintiff's mental impairments and limitations, and thus implicitly considered the mental activities required in SSR 96-8p, such that no error occurred in the ALJ's determination of Plaintiff's mental RFC. (Dft's Br. at 11). Additionally, Defendant argues that the ALJ was not required to include additional nonexertional limitations in the RFC because the vocational expert testified that, given the limitation to detailed but not complex tasks, Plaintiff would be able to perform the general clerk job as generally performed, and for which she did perform at the level of substantial gainful activity within the past fifteen years. (Dft's Br. at 13).

Substantial evidence supports the ALJ's mental RFC determination, and the ALJ followed the function-by-function mental RFC analysis as required. The ALJ stated that she

considered all of the medical evidence in the record, including the reports of Plaintiff's psychological consultative examiner and the non-examining state agency psychologist and psychiatrist. (Tr. 83). In November of 2011, psychologists recorded that Plaintiff denied suicidal ideations and hallucinations, reported that she could "independently perform all activities of daily living," and that she had "adequate" ability to "complete simple tasks." (Tr. 337-38). The psychologist found evidence of a depressive disorder and noted that her "current prognosis is fair," and that she was "capable of managing benefit payments in her own interest." (Tr. 339). In October of 2013, a psychological report noted that she has "good social functioning" and "enjoys being around people." (Tr. 496-97). Her "[a]bstract thinking appeared adequate," and she experienced "no delusional thought content." *Id.* The Plaintiff herself described her ability "to complete tasks in a timely and appropriate manner over a sustained period of time" as "adequate"; significantly, the examiner concluded that "[h]er depression does not prevent her from being able to work," and that "the current medications help with depression." (Tr. 498).

While the ALJ gave "great weight" to the conclusions of the state agency psychologist and psychiatrist who determined that Plaintiff has moderate limitations in concentration, persistence, and pace, the ALJ also considered that Plaintiff's ability to complete tasks in a timely and appropriate manner over a sustained period of time was adequate, her concentration was noted as fair, and she could perform serial sevens.[2] (Tr. 80, citing Tr. 496-99). The ALJ did

---

[2] "Serial sevens" refers to a test in which the examinee is asked to count backwards by sevens. 20 C.F.R. Pt. 404, Subpt. P., app. 1 § 12.00C(3) (2016) ("On mental status examinations, concentration is assessed by tasks such as having you subtract serial sevens or serial threes from 100."). Effective January 17, 2017, the Social Security Administration published major revisions to the criteria for evaluating mental disorders. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66161 (Sept. 26, 2016) (codified at 20 C.F.R. Pt. 404, Subpt. P, app. 1. §§ 12.00 *et seq.* (2017)). The revisions removed the specific reference to "serial sevens" in favor of more general evaluations of function, such as "[i]nitiating and performing a task that you understand and know how to do," "working at an appropriate and consistent pace,"

find that Plaintiff's records demonstrated a history of major depressive disorder, and she accounted for this. (Tr. 80-81). However, the ALJ also weighed the psychological consultative examiner's opinion, which gave Plaintiff a fair prognosis and noted that Plaintiff reported that her depression did not prevent her from being able to work. (Tr. 83 citing Tr. 495). Likewise, the ALJ considered and gave some weight to the opinions of the state agency reviewing psychologist and psychiatrist who concluded—despite Plaintiff's moderate limitation in concentration, persistence, and pace—that Plaintiff is able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate and attend for extended periods, interact with others, and respond to changes appropriately. (Tr. 83). The ALJ also considered that Plaintiff's mental status examination was generally normal, with depressed mood, tearful affect, and poor remote memory. (Tr. 83). Plaintiff's psychological consultative examiner also noted that her attentiveness and energy were good, her approach to tasks was organized and persistent, her ability to complete tasks in a timely and appropriate manner over a sustained period of time was adequate, and her abstract thinking appeared adequate. (Tr. 497).

With respect to daily living, the ALJ considered Plaintiff's reports that she cared for her personal needs, cared for her granddaughter, shopped, managed her finances, and prepared simple meals. (Tr. 80, citing Tr. 495-98). During psychological evaluation, the Plaintiff also reported that she was able to maintain a residence, manage her finances, and adequately handle changes in routine. *Id.* The ALJ also noted Plaintiff's report that she needed assistance with her personal needs, preparing meals, and shopping for groceries due to her physical impairments. *Id.*

---

"following one- or two-step oral instructions to carry out a task," and "using reason and judgment to make work-related decisions." 20 C.F.R. Pt. 404, Subpt. P., app. 1 § 12.00E1, 12.00E3 (2017); *see also* 81 Fed. Reg. 66138, 66139-42 (collecting and responding to public comments on the revisions to this section). This change does not affect the Court's analysis.

16

Regarding social functioning, the ALJ also gave great weight to Plaintiff's reported good social functioning and enjoyment of being around other people. *Id.* The ALJ considered that Plaintiff was accompanied to her evaluation by a friend, lived with her daughter and granddaughter, attends church on Sundays with her aunt, and is not uncomfortable in large crowds of people. *Id.* Finally, the ALJ considered that Plaintiff has not experienced episodes of decompensation for extended durations. *Id.* As discussed at length in the previous section, the ALJ retains sole discretion for determining Plaintiff's RFC, and the Court finds substantial evidence supports the ALJ's determination following consideration of all of the evidence that Plaintiff's mental RFC for light work subject to the stated limitations.

The ALJ's decision satisfies the narrative discussion requirements of SSR 96-8p. In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that not severe. SSR 96-8p; 20 C.F.R. §§ 404.1523, 416.923. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* The assessment must include a narrative discussion describing how the evidence supports each conclusion, citing both specific medical facts and nonmedical evidence. *Id.* The RFC assessment must first identify the claimant's functional limitations and assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8p.

In making her mental RFC determination, the ALJ must consider nonexertional functions such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures. 20 C.F.R. § 404.1545(c). SSR 96-8p requires that the ALJ's mental RFC determination discuss how the evidence supports her conclusion, including objective medical and other evidence; resolution of inconsistencies in the evidence as a

whole; and a logical explanation of the effects of the claimant's symptoms on her ability to work, but the narrative discussion requirements do not obligate the ALJ to discuss each of the four work-related mental activities. *Walton v. Astrue*, No. 3:10–CV–0815–D, 2011 WL 195975, at *9 (N.D. Tex. Jan. 20, 2011); *see also Wilson v. Colvin*, No. 3:15–CV–0031–BK, 2015 WL 6438245, at *4 (N.D. Tex. Oct. 22, 2015) (finding narrative discussion requirements satisfied where "[t]he ALJ at least implicitly considered Plaintiff's concentration, persistence and ability to understand, remember, and carry out instructions and act appropriately in a work setting when she observed that Plaintiff reported that she can pay attention all day and is good at following instructions, handling stress, and dealing with changes in routine.").

Plaintiff' heavily relies on *Otte v. Commissioner of SSA*, No. 3:08–CV–2078, 2010 WL 4363400, at *7 (N.D. Tex. Oct. 18, 2010). In *Otte*, the court found legal error in the ALJ's mental RFC assessment because the ALJ substituted consideration of the basic mental demands of unskilled work for the function-by-function mental RFC analysis required. *Id.* at *5. The ALJ assumed that the claimant's failure to meet or equal a listed impairment at step three equated with the capacity to do at least unskilled work. *Id.* at *7. The ALJ made this assumption without performing a function-by-function analysis of the claimant's mental RFC. *Id.*

Here, the ALJ explained Plaintiff's basic mental abilities after considering all the relevant medical evidence, and did not assume, as the ALJ in *Otte* did, that Plaintiff could perform all unskilled work because she didn't meet or equal a listed impairment at step three. The ALJ complied with SSR 96-8p by considering all of the evidence in the record described at length above, including Plaintiff's reported mental abilities and functions, as well as the opinions of Plaintiff's consulting psychological examiner and state agency reviewing psychologist and psychiatrist. (Tr. 81-83). The ALJ analyzed Plaintiff's mental impairment in detail and

concluded the most Plaintiff could perform is light work involving detailed, but not complex tasks. (Tr. 81, 83). In making her finding, the ALJ specifically acknowledged moderate limitation in the domain of concentration, persistence, and pace, (Tr. 80), but concluded that the evidence demonstrated that Plaintiff retained the capacity to perform light work, and substantial evidence supports the ALJ's determination.

V. CONCLUSION

Because the ALJ did not commit reversible error and her decision is supported by substantial evidence, Plaintiff's request to reverse the ALJ's decision and remand the case for an award of benefits or, in the alternative, additional administrative proceedings is **DENIED** and the Commissioner's decision is **AFFIRMED**. A final judgment will be entered separately.

IT IS SO ORDERED.

SIGNED this 29th day of September, 2017.

_____
DIANA SONG QUIROGA
United States Magistrate Judge